UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

FRANKENMUTH MUTUAL INSURANCE
COMPANY, a Michigan corporation

       Plaintiff,

v.

AMERICAN PIPELINE CONSTRUCTION,
LLC, a Florida limited liability company,
MARCIO VIEIRA, individually, ERIKA
VIEIRA, individually, ANDRES LUNA,
individually, and SUZANNE LUNA, individually,

       Defendants.

_____/

**COMPLAINT FOR DAMAGES,
INJUNCTIVE AND OTHER EQUITABLE RELIEF**

Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY, by and through its undersigned counsel, hereby sues Defendants, AMERICAN PIPELINE CONSTRUCTION, LLC, MARCIO VIEIRA, ERIKA VIEIRA, ANDRES LUNA and SUZANNE LUNA, and states as follows:

**I.  PARTIES, JURISDICTION AND VENUE**

1.  This is an action for declaratory relief and supplemental relief under 28 U.S.C. §2201 and 2202.

2.  Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship.  The parties are citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorney's fees.

CASE NO.: _____

3.      Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY ("FMIC"), is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Frankenmuth, Michigan who is otherwise authorized to do business within the State of Florida.   FMIC is a citizen of the State of Michigan.

4.      Defendant, AMERICAN PIPELINE CONSTRUCTION, LLC ("APC"), is a limited liability corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in North Miami Beach, Miami-Dade County, Florida.  In accordance with APC's *Operating Agreement* dated July 23, 2019, APC's "members" consist of MARCIO VIERA and ANDRES LUNA, who reside in Hillsborough County and Miami-Dade County, Florida, thereby rendering APC a citizen of the State of Florida.

5.      Defendant, MARCIO VIEIRA, is an individual who resides in Hillsborough County, Florida, and who is otherwise *sui juris*.

6.      Defendant, ERIKA VIERIRA, is an individual who resides in Hillsborough County, Florida, and who is otherwise *sui juris*.

7.      Defendant, ANDRES LUNA, is an individual who resides in Miami-Dade County, Florida and who is otherwise *sui juris*.

8.      Defendant, SUZANNE LUNA, is an individual who resides in Miami-Dade County, Florida and who is otherwise *sui juris*.

9.      Venue is proper in this Court because it is the situs where the legal obligation arose, where APC operated and conducted its business which gives rise to the instant claims, and where certain of the Defendants reside.

10.     All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

CASE NO.: _____

## II.  GENERAL ALLEGATIONS

### A.   The Bonded *Contracts* and the *Bonds*

11.   FMIC is engaged in the business of providing surety bonds.

12.   APC entered into contracts with several municipalities and/or obligees requiring APC to perform certain underground utility work and other improvements on various construction projects.  In connection with those contracts, FMIC, as surety, issued the following *Payment and Performance Bonds* (collectively, the "*Bonds*") on behalf of APC and in favor of the various listed obligees:

| Obligee | Project | Bond No. |
|---|---|---|
| Florida City | Pump Station Number 8 | SUR0001577 |
| Miami-Dade County | RPQ No: Po236 -Replacement of 48IN Butterfly Valve and Actuator on Hydrotreaters | SUR0003202 |
| City of Miami | ITB No. 19-20-009 NW 24th Ave., NW 25th Ave., and NW 32nd Ave. Street Road Improvements, D1-Project | SUR0003213 |
| Manatee County | Coquina Beach Drainage Improvements, Phase II | SUR0003246 |
| City of Tarpon Springs | Pent Street & Grosse Avenue Drainage & Roadway Improvements Project | SUR0003252 |
| Sarasota County | Bahia Vista Parallel Force Main | SUR0003254 |
| Lead Engineering Contractors, LLC | SR-9 (I-95) at Copans Road Interchange Project | SUR0003255 |
| City of Tampa | Sunset Park Water Main Replacement (West) Project | SUR0004129 |
| Miami-Dade County | Drainage Improvements | SUR0002724 |

CASE NO.: _____

**B.**     **The *Indemnity Agreement***

13.     As a condition to issuing the *Bonds*, FMIC required each of APC, MARCIO VIEIRA, ERIKA VIEIRA, ANDRES LUNA and SUZANNE LUNA (collectively, the "INDEMNITORS") to execute the *General Agreement of Indemnity* executed on May 4, 2020, May 5, 2020, and May 14, 2020 (the "*Indemnity Agreement*"). A true and correct copy of the *Indemnity Agreement* is attached hereto and made a part hereof as **Exhibit "A"**.

14.     Pursuant to Articles 3 and 5 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to indemnify, hold harmless and exonerate FMIC from and against any and all losses and/or expenses incurred in connection with FMIC's issuance of the *Bonds*:

> **Indemnification and Hold Harmless:** Indemnitors ***shall exonerate, indemnify and save Company harmless from and against all Loss***. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.
>
> * * *
>
> … ***In addition to the foregoing, Indemnitors shall promptly, on Company's written demand, procure the full and complete discharge of Company from all Bonds demanded by Company and all liability in connection with such Bonds.*** If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Company an amount of money that Company determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Company for the funding of the bonded obligations (Emphasis supplied).

15.     Pursuant to Article 5 of the *Indemnity Agreement*, the INDEMNITORS agreed to deposit with FMIC collateral security:

> **Collateral Security**: ***Indemnitors agree to deposit with Company***, upon demand, funds, other ***collateral security acceptable to the Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss***. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds

CASE NO.: _____

> improperly diverted by any Indemnitor.  Sums deposited with Company
> pursuant to this paragraph may be used by Company to pay such claim or
> to be held by Company as collateral security against any Loss or unpaid
> premium on any Bond.  Indemnitors agree that Company would suffer
> irreparable damage and would not have an adequate remedy at law if
> Indemnitors fail to comply with the provisions of this paragraph…
> (Emphasis added)

16. Pursuant to Article 7 of the *Indemnity Agreement*, the INDEMNITORS, jointly and

severally, agreed that their failure to comply with the collateral obligations of the *Indemnity*

*Agreement* would result in irreparable harm to FMIC, which would not be sufficiently addressed

by a monetary award, and which would entitle FMIC to injunctive relief:

> … The failure of Indemnitors, collectively or individually, to perform or
> comply with any provision of this Agreement ***shall cause irreparable***
> ***harm to Company for which Company has no adequate remedy at law***.
> Company shall be entitled to injunctive relief and/or specific performance,
> and Indemnitors waive any claims or defenses to the contrary." (Emphasis
> added)

17. Pursuant to Article 12 of the *Indemnity Agreement*, the INDEMNITORS, jointly

and severally, obligated themselves to provide such books, records and accounts as may be

requested by FMIC in connection with the claims against the *Bonds,* as well as related to the

instant indemnity demands:

> **Books, Records and Credit**:  ***Indemnitors shall furnish upon demand***,
> and Company shall have the right of free access to, at reasonable times, ***the***
> ***records of Indemnitors including, but not limited to, books, papers,***
> ***records, documents, contracts, reports, financial information, accounts***
> ***and electronically stored information***, for the purpose of examining and
> copying them.  Indemnitors expressly authorize Company to access their
> credit records, including, but not limited to, account numbers and/or
> account balances from financial institutions…. (Emphasis added)

18. Pursuant to Article 4 of the *Indemnity Agreement*, the INDEMNITORS, jointly and

severally, agreed that FMIC shall have the right to settle any claims against the *Bonds*, in its sole

CASE NO.: _____

and absolute discretion, and that any amounts expended in connection with such settlements would be the liability and responsibility of the INDEMNITORS:

> **Claim Settlement**:  ***Company shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with, arising out of, or relating to any Bond or Contract shall be paid, compromised, settled, tried, defended or appealed***, and its determination shall be final, binding and conclusive upon the Indemnitors.  Company shall be entitled to immediate reimbursement of any and all Loss incurred under the belief that it was necessary or expedient to make such payments.  (Emphasis added)

19.    Pursuant to Article 22 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, waived any right to trial by jury of the matters set forth herein.

20.    The *Indemnity Agreement* constitutes a valid and fully enforceable contract between FMIC and the INDEMNITORS.

21.    FMIC has fully performed all of its obligations under the *Indemnity Agreement*.

**C.    *Bond* Claims Upon FMIC**

     **i.    Florida City (Performance and Payment Bond Claims)**

22.    FMIC, as surety, issued a separate *Performance Bond* and *Payment Bond*, each bearing no. SUR001577, on behalf of APC, as principal, with Florida City, as obligee, on the project commonly known as "Pump Station Number 8" (the "Florida City Project").

23.    Florida City asserted a claim against FMIC under the Florida City *Performance Bond*, alleging that APC did not complete its obligations.  Florida City terminated APC's contract, made demand upon FMIC, and advise that Florida City would retain other contractors to compete APC's obligations.  Florida City has not yet confirmed the cost to complete APS's obligations but intends to utilize the remaining contract balances to perform APC's obligations.  As such, to date, the potential loss under the Florida City *Performance Bond* remains undetermined.

CASE NO.: _____

24.     FMIC received claims under the Florida City *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Florida City Project, the status of which is as follows:

| Claimant | Amount | Paid | Comment |
|---|---|---|---|
| I&C Earthmovers | $8,204.08 | N/A | Pending |
| Ferguson Waterworks | $1,566.66 | N/A | Pending |
| **Subtotal** | **$9,770.74** | **$0.00** | |

25.     FMIC remains potentially liable under the Florida City *Payment Bond* for the pending claims in the amount of **$9,770.74**, as well as any other and further claims as may be made against the Florida City *Payment Bond.*

26.     FMIC consented to Florida City issuing payment directly to APC in the amount of $46,620.44, as APC committed to issuing payment to its subcontractors and suppliers once Florida City released the payment to APC.  Despite APC's commitment, APC received Florida City's payment but did not pay the subcontractors and suppliers on the Florida City Project.

          **ii.     Miami-Dade County / Butterfly Valve (Payment Bond Claims Only)**

27.     FMIC, as surety, issued a separate *Performance Bond* and *Payment Bond*, each bearing no. SUR0003202, on behalf of APC, as principal, with Miami-Dade County, as obligee, on the project commonly known as "RPQ No. P0236 – Replacement of Butterfly Valve Project (the "Butterfly Valve Project").

28.     FMIC received claims under the Butterfly Valve *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Butterfly Valve Project, the status of which is as follows:

CASE NO.: _____

| Claimant | Amount | Paid | Comment |
|---|---|---|---|
| I&C Earthmovers | $21,402.83 | N/A | Pending |
| Ferguson Waterworks | $115,417.24 | $115,417.24 | Settled |
| **Subtotal** | **$136,820.07** | **$115,417.24** | |

29.     FMIC has sustained a loss in the amount of **$115,417.24** in connection with the Butterfly Valve *Payment Bond*, plus any applicable loss adjustment expenses.

30.     FMIC remains potentially liable under the Butterfly Valve *Payment Bond* for the pending claim in the amount of **$21,402.83**, as well as any other and further claims as may be made against the Butterfly Valve *Payment Bond*.

### iii.     City of Miami (Payment Bond Claims Only)

31.     FMIC, as surety, issued a separate *Performance Bond* and *Payment Bond*, each bearing no. SUR0003213, on behalf of APC, as principal, with the City of Miami, as obligee, on the project commonly known as "NW 24th, NW 25th Ave., and NW 32nd Street Road Improvements, D1 Project" (the "N.W. 24th Ave. Project").

32.     FMIC received claims under the N.W. 24th Ave. *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the N.W. 24th Ave. Project, the status of which is as follows:

| Claimant | Amount | Paid | Comment |
|---|---|---|---|
| I&C Earthmovers | $80,835.52 | N/A | Pending |
| Fast Concrete Co. | $5,193.42 | N/A | Resolved by another indemnitor which is not a party to this lawsuit |
| Core & Main | $28,211.36 revised to $19,780.01 | N/A | Resolved by another indemnitor |

CASE NO.: _____

| | | | which is not a party to this lawsuit |
|---|---|---|---|
| Eagle Carriers of South Florida | $12,489.20 | N/A | Resolved by another indemnitor which is not a party to this lawsuit |
| Ferguson Enterprises | $75,815.91 | N/A | Resolved by another indemnitor which is not a party to this lawsuit |
| Tate Transport | $21,639.00 | N/A | Resolved by another indemnitor which is not a party to this lawsuit |
| **Subtotal** | **$215,753.06** | **$0.00** | |

33.     FMIC remains potentially liable for the pending claim under the N.W. 24th Ave. *Payment Bond* in the amount of **$80,835.52**, as well as any other and further claims as may be made against the N.W. 24th Ave. *Payment Bond.*

    **iv.**     **Manatee County** **(Performance and Payment Bond Claims)**

34.     FMIC, as surety, issued a *Public Construction Bond*, bearing no. SUR0003246 and containing underlined combined *Performance Bond* and *Payment Bond* obligations, on behalf of APC, as principal, with Manatee County, as obligee, on the project commonly known as "Coquina Beach Drainage Improvements, Phase II" (the "Coquina Beach Project").

35.     Manatee County asserted a claim against FMIC under the Coquina Beach *Performance Bond*, and subsequently advised that it would utilize the remaining contract balances to complete APC's obligations.  A final accounting of the costs incurred by Manatee County to complete APC's contract has not yet been received.  As such, to date, the potential loss under the Coquina Beach *Performance Bond* remains undetermined.

CASE NO.: _____

36.     FMIC received claims under the Coquina Beach *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Coquina Beach Project, the status of which is as follows:

| **Claimants** | **Amounts** | **Paid** | **Comment** |
|---|---|---|---|
| Synergy Rents | $5,213.97 | $5,213.97 | Settled |
| Allied Trucking | $7,953.80 | $11,532.39* | Settled |
| Cemex Construction | $12,218.42 | N/A | Pending |
| One2PH | $22,460.00 | N/A | Pending |
| Charger Enterprises | $103,324.78 | $17,412.11 | Settled |
| Amroad, LLC | $8,459.80 | N/A | Pending |
| Core & Main | $6,953.39 | N/A | Pending |
| Ram Tool | $12,210.00 | N/A | Pending |
| Fuzion Project | $67,800.00 | N/A | Pending |
| Trico Direct Inc. d/b/a Seton | $21,702.00 | $16,515.26 | Settled |
| Ferguson Enterprises, Inc. | $18,556.22 | $24,912.57* | Settled |
| **Subtotal** | **$286,852.38** | **$75,586.30** | |
| **\* Settled lawsuit which included claim for fees, interest and costs** | | | |

37.     FMIC has sustained a loss in the amount of **$75,586.30** in connection with the Coquina Beach *Payment Bond*, plus any applicable loss adjustment expenses.

38.     FMIC remains potentially liable under the Coquina Beach *Payment Bond* for the pending claims totaling **$211,266.08**, as well as any other and further claims as may be made against the Coquina Beach *Payment Bond.*

**v.     City of Tarpon Springs (Performance and Payment Bond Claims)**

39.     FMIC, as surety, issued a separate *Performance Bond* and *Payment Bond*, each bearing no. SUR0003252, on behalf of APC, as principal, with the City of Tarpon Springs, as

- 10 -

CASE NO.: _____

obligee, on the project commonly known as "Pent Street & Grosse Avenue Drainage & Roadway Improvements Project" (the "Tarpon Springs Project").

40.     City of Tarpon Springs asserted a claim against FMIC under the Tarpon Springs *Performance Bond*.  FMIC is seeking a completion contractor to perform the work remaining on APC's contract. As such, to date, the potential loss under the Tarpon Springs *Performance Bond* remains undetermined.

41.     FMIC received the following claims under the Tarpon Springs *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Tarpon Springs Project, the status of which is as follows:

| **Claimants** | **Amount** | **Paid** | **Comment** |
|---|---|---|---|
| Rinker Materials | $142,281.00 | $98,155.21 | Settled |
| Bob's Barricades | $3,314.00 | $2,571.64 | Settled |
| Holland Pump | $21,478.00 | $11,674.50 | Settled |
| Concrete Products | $43,007.00 | N/A | Pending |
| I&C Earthmovers | $93,319.56 | N/A | Pending |
| Action Rentals | $9,807.13 | $9,807.13 | Settled |
| CTI Construction Testing | $21,750.65 | N/A | Pending |
| Allied Trucking | $99,042.35 | N/A | Pending |
| **Subtotal** | **$433,999.69** | **$122,208.48** | |

42.     FMIC has sustained a loss in the amount of **$122,208.48** in connection with the Tarpon Springs *Payment Bond*, plus any applicable loss adjustment expenses.

43.     FMIC remains potentially liable under the Tarpon Springs *Payment Bond* for the pending claims, totaling the amount of **$311,791.21**, as well as any other and further claims as may be made against the Tarpon Springs *Payment Bond.*

CASE NO.: _____

### vi.    Sarasota County  (Performance and Payment Bond Claims)

44.    FMIC, as surety, issued a *Performance* and *Payment Bond*, bearing no. SUR0003254, on behalf of APC, as principal, with Sarasota County, as obligee, on the project commonly known as "Bahia Vista Parallel Force Main Project" (the "Bahia Vista Project").

45.    Sarasota County asserted a claim against FMIC under the Bahia Vista *Performance Bond*. FMIC is seeking a completion contractor to perform the work remaining on APC's contract with Sarasota County. As such, to date, the potential loss under the Bahia Vista *Performance Bond* remains undetermined.

46.    FMIC received claims under the Bahia Vista *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Bahia Vista Project, the status of which is as follows:

| Claimants | Amount | Paid | Comment |
|---|---|---|---|
| Bob's Barricades | $14,215.00 | $19,796.30* | Settled |
| Fortiline | $1,151,831.00 | N/A | Pending |
| Anixter | $26,036.00 | N/A | Pending |
| Synergy Rents | $17,329.26 | $17,329.26* | Settled |
| Holland Pump | $65,660.85 | $65,660.85* | Settled |
| One2PH | $66,756.00 | N/A | Pending |
| McShea Contracting, LLC | $2,220.00 | $2,220.00* | Settled |
| I&C Earthworks | $50,188.00 | N/A | Pending |
| Oldcastle Infrastructure, Inc. | $85,948.34 | N/A | Pending |
| TB Landmark Construction | $109,927.01 | N/A | Pending |
| Sunbelt Rentals | $11,902.89 | N/A | Pending |
| Vulcan Materials | $56,058.95 | $50,000.00 | Settled |
| Allied Trucking | $57,603.12 | $74,000.00 | Settled |

CASE NO.: _____

| Subtotal | $1,715,676.42 | $229,006.41 | |
|---|---|---|---|
| * Settled lawsuit which included claim for fees, interest and costs | | | |

47.     FMIC has sustained a loss in the amount of **$229,006.41** in connection with the Bahia Vista *Payment Bond*, plus any applicable loss adjustment expenses.

48.     FMIC remains potentially liable under the Bahia Vista *Payment Bond* for the pending claims, totaling the amount of **$1,486,670.01**, as well as any other and further claims as may be made against the Bahia Vista *Payment Bond.*

**vii.    Lead Engineering Contractors, LLC (Payment Bond Claims Only)**

49.     FMIC, as surety, issued a separate *Subcontractor Surety Performance Bond* and *Subcontractor Surety Payment Bond*, each bearing no. SUR0003255, on behalf of APC, as principal, with Lead Engineering Contractors, LLC ("Lead"), as obligee, on the project commonly known as "SR 9 (I-95) at Copans Road Interchange Project (the "Copans Road Project").

50.     FMIC received the following claims under the Copans Road *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Copans Road Project, the status of which is as follows:

| Claimants | Amounts | Paid | Comment |
|---|---|---|---|
| United Rentals | $7,309.30 | N/A | Pending |
| A Falero Trucking | $42,478.28 | N/A | Pending |
| I&C Earthmovers | $11,810.56 | N/A | Pending |
| Concrete Products of the Palm Beaches | $12,664.88 | N/A | Pending |
| **Subtotal** | **$74,263.02** | **$0.00** | |

CASE NO.: _____

51.     FMIC remains potentially liable under the *Copans Road Payment Bond* for the pending claims, totaling **$74,263.02**, as well as any other and further claims as may be made against the Copans Road *Payment Bond.*

52.     Despite APC confirming in November 2021 that all contract balances on the Copans Road Project were to be deposited into an escrow account, Lead paid $33,139.69 directly to APC.  APC, in turn, neither deposited the bonded contract funds into the escrow account nor paid subcontractors or suppliers on the Copans Road Project.

### viii.     <u>City of Tampa</u>  (Performance and Payment Bond Claims)

53.     FMIC, as surety, issued a *Public Construction Bond*, bearing no. SUR0004129 and containing <u>combined</u> *Performance Bond* and *Payment Bond* obligations, on behalf of APC, as principal, with the City of Tampa, as obligee, on the project commonly known as "Sunset Water Main Replacement (West)" (the "Sunset Park Project").

54.     City of Tampa asserted a claim against FMIC under the Sunset Park *Performance Bond*.  FMIC is in the process of contracting with a completion contractor at a cost in excess of $4,311,520.00.  As such, to date, the potential loss under the Sunset Park *Performance Bond* remains undetermined.

55.     FMIC received the following claims under the Sunset Park *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Sunset Park Project, the status of which is as follows:

| **Claimants** | **Amount** | **Paid** | **Comment** |
|---|---|---|---|
| Coll Construction | $66,240.00 | N/A | Case Dismissed |
| Cornerstone Barricades | Amount Not Identified | N/A | Pending |
| Vulcan Construction | $1,668.00 | N/A | Pending |

CASE NO.: _____

| | | | |
|---|---|---|---|
| Mondragon Paving LLC | $47,591.75 | $47,591.75 | Settled |
| Preferred Materials | $27,409.00 | $27,409.00 | Settled |
| CTI Construction Testing | $43,667.88 | N/A | Pending |
| Allied Trucking of Central Florida, LLC | $20,276.89 | $25,526.77* | Settled |
| **Subtotal** | **$206,853.52** | **$100,527.52** | |
| *\* Settled lawsuit which included claim for fees, interest and costs* | | | |

56.     FMIC has sustained a loss in the amount of **$100,527.52** in connection with the Sunset Park *Payment Bond*, plus any applicable loss adjustment expenses.

57.     FMIC remains potentially liable under the Sunset Park *Payment Bond* for the pending claims, totaling **$106,326.00 (plus Cornerstone Barricades' "TBD" claim amount)**, as well as any other and further claims as may be made against the *Sunset Park Payment Bond.*

### ix.     Miami-Dade County / Drainage (Payment Bond Claims Only)

58.     FMIC, as surety, issued a *Surety Performance and Payment Bond* bearing no. SUR0002724 and containing <u>combined</u> *Performance Bond* and *Payment Bond* obligations, on behalf of APC, as principal, with the Miami-Dade County as obligee, on the project commonly known as "Drainage Improvements (the "Drainage Improvements Project").

59.     FMIC received claims under the Drainage Improvements *Payment Bond* from various of APC's subcontractors and suppliers, claiming non-payment for goods and/or services on the Drainage Improvements Project, the status of which is as follows:

| <u>**Claimants**</u> | <u>**Amount**</u> | <u>**Paid**</u> | <u>**Comment**</u> |
|---|---|---|---|
| Action Rental MIA, LLC | $10,043.91 | N/A | Pending |
| SF Land Surveyors | $8,470.00 | $6,070.00 | Partially Settled |
| **Subtotal** | **$18,513.91** | **$6,070.00** | |

CASE NO.: _____

60.     FMIC has sustained a loss in the amount of **$6,070.00** in connection with the Drainage Improvements *Payment Bond*, plus any applicable loss adjustment expenses.

61.     FMIC remains potentially liable under the Drainage Improvements *Payment Bond* for the pending claims, totaling **$12,443.93**, as well as any other and further claims as may be made against the Drainage Improvements *Payment Bond.*

      **D.**     **FMIC's Demands Against INDEMNITORS / FMIC's Losses and Expenses**

62.     As a result of the claims against the *Bonds*, FMIC engaged in several written and oral communications with the INDEMNITORS, seeking indemnity and collateralization under the *Indemnity Agreement*.

63.     On January 21, 2022, FMIC made demand upon the INDEMNITORS to indemnify FMIC and post collateral as a result of APC's default on the Bahia Vista Project.  A true and correct copy of the correspondence is attached hereto as **Exhibit "B".**

64.     On February 23, 2022, FMIC reiterated its demand upon the INDEMNITORS to satisfy their indemnity and collateral obligations under the *Indemnity Agreement*.  A true and correct copy of the correspondence is attached hereto as **Exhibit "C".**

65.     Additionally, FMIC has engaged in numerous other written communications with the INDEMNITORS (and their counsel in the various pending litigations) concerning the INDEMNITORS' obligations to indemnify FMIC and post collateral in connection with the pending claims.

66.     Despite FMIC's demands, the INDEMNITORS have failed and refused to indemnity FMIC or post collateral satisfactory to FMIC in compliance with their obligations under the *Indemnity Agreement*.

CASE NO.: _____

67.     FMIC anticipates incurring additional losses and expenses in investigating, defending against and/or satisfying any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds*.

68.     FMIC has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

## COUNT I – BREACH OF CONTRACT:
## DAMAGES/DEMAND FOR INDEMNIFICATION
## (AGAINST INDEMNITORS)

69.     FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as if fully set forth herein.

70.     This is an action for damages seeking relief at law under the *Indemnity Agreement*.

71.     There exists a valid and fully enforceable contract between FMIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

72.     As a result of the claim against the *Bonds*, FMIC has made demand upon the INDEMNITORS under the *Indemnity Agreement* for payment in satisfaction of the losses and expenses incurred by FMIC.

73.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify FMIC.

74.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, FMIC has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds*.

CASE NO.: _____

WHEREFORE, FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS awarding FMIC: (a) its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement;* (b)  its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and (c) such other and further relief as this Court deems necessary, just and proper.

## COUNT II – COMMON LAW INDEMNIFICATION
## (AGAINST APC)

75.    FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as if fully set forth herein.

76.    This is an action for damages seeking relief at common law and in equity.

77.    There exists a special relationship between FMIC, as surety, and APC, as principal, arising out of the business dealings of the parties related to the various bonded contracts, projects and *Bonds*, such that it is appropriate for common law indemnification to exist.

78.    FMIC has fully and completely performed any and all obligations arising out of the business dealings between the parties related to the bonded contracts, projects and *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

79.    FMIC has incurred losses and loss adjustment expenses as a result of the special relationship between FMIC and APC.  Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds.*

CASE NO.: _____

80.     Any  and  all  losses  and  expenses  incurred  to  date  as  a  result  of  the  special

relationship between FMIC and APC, as well as any liability which may be imposed upon FMIC

as a result of the pending claims against the *Bonds*, arise only out of the vicarious, constructive,

derivative or technical liability imposed upon FMIC as a result of the fault and/or wrongdoing of

APC.

81.     At common law, APC is responsible to FMIC for any and all losses and expenses

incurred or to be incurred.

WHEREFORE,  FMIC  respectfully  requests  that  this  Honorable  Court  enter  a  *Final*

*Judgment* in its favor and against APC, awarding FMIC: (a) its general, special and consequential

damages which have been and/or will be incurred as a result of FMIC's payment of losses and

expenses for which APC should be liable under the legal theory of common law indemnity; (b) its

reasonable attorneys' fees and costs incurred in prosecution of the instant action; and (c) such other

and further relief as this Court deems necessary, just and proper.

## COUNT III - CONTRACTUAL EXONERATION
## (AGAINST INDEMNITORS)

82.     FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as

if fully set forth herein.

83.     This is an action for contractual exoneration.

84.     Pursuant to the terms of the *Indemnity Agreement*, each of the INDEMNITORS,

jointly and severally, agreed to exonerate FMIC from and against any losses and or expenses

incurred in connection with FMIC's issuance of the *Bonds.*

85.     By virtue of the right of exoneration set forth in the *Indemnity Agreement*, FMIC is

entitled to the INDEMNITORS' assets to protect FMIC from any and all additional losses and/or

expenses which may be incurred in connection with FMIC's issuance of the *Bonds*.

CASE NO.: _____

86.     The INDEMNITORS have failed to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with FMIC sufficient to cover the actual losses and claim against the *Bonds*.

87.     Unless the personal assets of the INDEMNITORS are collateralized, FMIC will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS: (a) requiring the INDEMNITORS to perform under the *Indemnity Agreement* and satisfy any and all pending claims under the *Bonds* which have not yet been paid by FMIC or, in the alternative, to post with FMIC satisfactory monies so as to protect FMIC from such future claims and/or liabilities; (b) directing the INDEMNITORS to pay and reimburse FMIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding FMIC such other and further relief as this Court deems necessary, just and proper.

### COUNT IV - COMMON LAW EXONERATION
### (<u>AGAINST APC</u>)

88.     FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as if fully set forth herein.

89.     This is an action for exoneration at common law and in equity.

90.     There exists a special relationship between FMIC, as surety, and APC, as principal, arising out of the parties' business dealings related to the bonded contracts, projects and *Bonds*, such that it is appropriate for common law exoneration to exist.

91.     FMIC has fully and completely performed any and all obligations arising out of the business dealings between the parties related to the bonded contracts, projects and *Bonds*, and is

CASE NO.: _____

wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

92.     FMIC has incurred direct losses and loss adjustment expenses associated with its investigation, defense and/or handling of the claim against the *Bonds*. Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds.*

93.     Any and all losses and expenses incurred to date as a result of the special relationship between FMIC and APC, as well as any liability which may be imposed upon FMIC as a result of the pending claim against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon FMIC as a result of the fault and/or wrongdoing of APC.

94.     At common law, APC is responsible to FMIC for any and all losses and expenses incurred or to be incurred, and APC is further obligated to immediately provide FMIC with sufficient funds as needed to satisfy FMIC's existing and potential obligations under the *Bonds*.

95.     By virtue of the right of exoneration set forth at common law and in equity, FMIC is entitled to APC's assets to protect FMIC from any and all losses and/or expenses which may be incurred in connection with FMIC's issuance of the *Bonds*.

96.     APC has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with FMIC sufficient to cover the actual losses and claim against the *Bonds*.

CASE NO.: _____

97.     Unless the personal assets of APC are collateralized, FMIC will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against APC: (a) requiring APC to exonerate FMIC at common law and in equity by satisfying any and all pending claims under the *Bonds* which have not yet been paid by FMIC or, in the alternative, to post with FMIC satisfactory monies so as to protect FMIC from such future claims and/or liabilities; (b) pay and reimburse FMIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding FMIC such other and further relief as this Court deems necessary, just and proper.

### COUNT V -SPECIFIC PERFORMANCE/INJUNCTIVE RELIEF
### AND DEMAND FOR POSTING OF COLLATERAL
### (AGAINST INDEMNITORS)

98.     FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as if fully set forth herein.

99.     This is an action for specific performance seeking injunctive relief.

100.    As a result of FMIC's liability arising from the INDEMNITOS' failure to exonerate, indemnify and post satisfactory collateral with FMIC, FMIC made demand upon the INDEMNITORS under the *Indemnity Agreement* to exonerate, indemnify and post satisfactory collateral with FMIC to cover FMIC's payments and potential losses and expenses.

101.    Despite such demands, the INDEMNITORS have failed and/or refused to full perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to post satisfactory collateral upon demand by FMIC.

102.    Pursuant to the terms of the *Indemnity Agreement*, each of the INDEMNITORS, jointly and severally, agreed that their conduct in failing to exonerate or otherwise place funds

- 22 -

CASE NO.: _____

with FMIC sufficient to cover the actual losses and claim against the *Bonds* would "cause irreparable harm" to FMIC for which FMIC "has no adequate remedy at law", and that FMIC "shall be entitled to injunctive relief and/or specific performance" of such rights.

103.   INDEMNITORS' failure to deposit the demanded collateral with FMIC in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which FMIC has no adequate remedy at law.

104.   FMIC is entitled to equitable relief for specific performance of the INDEMNITORS' obligation to post satisfactory collateral.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS: (a) granting FMIC specific performance of the *Indemnity Agreement* by directing the INDEMNITORS to provide satisfactory collateral to FMIC to cover FMIC's actual and/or potential losses and expenses; (b) awarding FMIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and (c) awarding FMIC such other and further relief as this Court deems necessary, just and proper.

**COUNT VI – QUIA TIMET**
**(AGAINST INDEMNITORS)**

105.   FMIC realleges and re-avers the allegations of paragraphs 1 through 68 hereof, as if fully set forth herein.

106.   This is an action for *quia timet* seeking injunctive and equitable relief.

107.   FMIC has provided notice to and demanded indemnity and exoneration from the INDEMNITORS under the terms of the *Indemnity Agreement*, requiring INDEMNITORS to post collateral sufficient to defray actual and/or potential losses and expenses in connection with the Bonds.

CASE NO.: _____

108.    The INDEMNITORS have failed to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise post collateral with FMIC sufficient to cover the actual and/or potential losses and expenses incurred by FMIC.

109.    As a result of the INDEMNITORS' breach of the *Indemnity Agreement*, FMIC has sustained losses, damages, costs, expenses and attorneys' fees by reason of having furnished and executed the *Bonds*.

110.    FMIC is concerned and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to the claimants for which FMIC may be liable, or that the INDEMNITORS, based upon their refusal to exonerate FMIC in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets.  FMIC is also concerned and apprehensive that the INDEMNITORS will be financially unable to pay the expenses incurred by FMIC, including attorneys' fees.

111.    In the absence of the equitable relief sought herein, FMIC will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the *Bonds* without being adequately secured by the INDEMNITORS for its obligations under the *Bonds*.

112.    By virtue of the rights under the *Indemnity Agreement* and the common law and equitable doctrine of *quia timet*, FMIC is entitled to have the INDEMNITORS post funds or other security with FMIC that is sufficient to cover the actual and/or anticipated losses associated with the claim against the *Bonds*.

113.    Unless the relief in the nature herein requested or its equivalent is granted, FMIC's equitable right of *quia timet* will be forever lost, depriving FMIC of adequate security for its obligations under the *Bonds*.  Further, unless the equitable relief requested below is granted, the

- 24 -

CASE NO.: _____

INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge the INDEMNITORS' obligations to exonerate FMIC.

114.    FMIC has a high probability of success on the merits, as the pending allegations of APC's default under the *Bonds* and projects has clearly triggered the INDEMNITORS' obligations under the *Indemnity Agreement*.  FMIC has duly performed its duties, obligations and conditions under the *Indemnity Agreement*, and the *Indemnity Agreement* provides for the relief sought in this count.

115.    The threatened injury to FMIC outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS: (a) awarding FMIC its general and consequential damages which have been and/or will be incurred (including FMIC's attorneys' fees and costs under the *Indemnity Agreement*); (b) ordering INDEMNITORS to immediately post collateral with FMIC (or deposit with the Clerk of this Court, for the benefit and protection of FMIC) in an amount to be determined by this Court to cover FMIC's anticipated losses and expenses in connection with the *Bonds*; and (c) award FMIC such other and further relief as this Court deems necessary, just and proper.  In the alternative, FMIC respectfully requests that this court order the INDEMNITORS to:

a.    Render a full and complete accounting of all assets owned by them or which they have an interest;

b.    Refrain from selling, transferring or disposing of their assets including, but not limited to, sums held in offshore accounts;

CASE NO.: _____

c.      Grant to FMIC an equitable lien upon all assets and property of INDEMNITORS including, but not limited to, realty, personally and mixed, owned by INDEMNITORS, and property in which INDEMNITORS have any interest, to remain in effect until INDEMNITORS place funds with FMIC as required by the *Indemnity Agreement* securing FMIC against any loss it has sustained or will sustain by virtue of it having executed the *Bonds*; and

d.      Award FMIC such other and further relief as this Court deems necessary, just and proper.

DATED this 24th day of August 2022.

**ETCHEVERRY HARRISON, LLP**
Attorneys for FMIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax:    (954) 370-1682
E-mail:   Etcheverry@etchlaw.com
             geller@etchlaw.com


By:   */s/ Edward Etcheverry*
        Edward Etcheverry, Fla. Bar No.: 856517
        Jeffrey S. Geller, Fla. Bar No.: 63721